958 F.2d 1029
 36 Soc.Sec.Rep.Ser. 584, Unempl.Ins.Rep. (CCH) P 16549A
Herbert MEYER, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Department of Health and
Human Services, Defendant-Appellee.
James E. GLOVER, SS# pib-pu-pcsd Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
Tom BATTLE, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health & Human Services,
Defendant-Appellee.
Brenda S. FINDLEY, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 Nos. 89-8835, 89-8935, 89-8943 and 90-8081.
 United States Court of Appeals,
Eleventh Circuit.
 April 8, 1992.
 
 Charles L. Martin, Decatur, Ga., for Meyer, Glover, Battle and Findley.
 Sharon Douglas Stokes, Asst. U.S. Atty., Bruce R. Granger, Office of General Counsel, Haila Naomi Kleinman, Mack A. Davis, Mary Ann Sloan, Atlanta, Ga., for Sullivan in No. 89-8835.
 Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., Haila Naomi Kleinman (Lead Counsel), Mack A. Davis, Mary Ann Sloan, Bruce R. Granger, Office of General Counsel, Atlanta, Ga., for Sullivan in Nos. 89-8935 and 89-8943.
 Robert L. Barr, Jr., U.S. Atty., Jane Wilcox Swift, Asst. U.S. Atty., Bruce R. Granger, Mack A. Davis, Haila Naomi Kleinman (Lead Counsel), Mary Ann Sloan, Office of General Counsel, Atlanta, Ga., for Sullivan in No. 90-8081.
 Appeal from the United States District Court for the Middle District of Georgia.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and PECK*, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 
 1
 The issue before us in these consolidated appeals is whether a district court must consider the impact of inflation when awarding attorney's fees under section 204 of the Equal Access to Justice Act, 28 U.S.C. § 2412 (1988) (the EAJA or the Act). Specifically, when the court determines that the market rate for attorney's fees exceeds the statutory cap of $75 per hour, must the court then adjust the cap upward to account for cost-of-living increases. We hold that the court must consider cost-of-living increases when awarding attorney's fees under the EAJA. The district court failed to do so in Meyer v. Sullivan, No. 89-8835; accordingly, we vacate the court's judgment in that case and remand for further proceedings. In each of the other cases, we affirm the district court's judgment.[1]
 
 I.
 
 2
 In July 1971, Herbert Meyer, the appellant in No. 89-8835, sustained an injury to his back. As a result of severe back pain caused by the injury, Meyer, since December 1973, has been unable to hold gainful employment. In February 1977, the Social Security Administration awarded Meyer disability benefits under sections 216(i) and 223 of the Social Security Act (the SSA), 42 U.S.C. §§ 416(i), 423 (1988); the benefits were awarded both retroactively (from December 1973 through the time of the award) and prospectively.[2]
 
 
 3
 Pursuant to section 223 of the SSA, 42 U.S.C. § 423(f), the Department of Health and Human Services (HHS or the Department) required that Meyer, in order to remain eligible for benefits, report periodically for physical examinations which would confirm his continued disability. After Meyer failed to show up at a scheduled examination, the Department issued notice in February 1982 that Meyer's benefits would be terminated effective April 30, 1982. Meyer requested a hearing over the termination of benefits, and on November 10, 1982, an administrative law judge (ALJ) conducted such a hearing.[3] The ALJ, on July 29, 1983, issued an order affirming the denial of benefits. Meyer, on December 16, 1983, reapplied for disability benefits; the Department, however, denied his application.[4] On December 8, 1986, the Appeals Council of the Social Security Administration affirmed the decision to deny benefits. On February 5, 1987, Meyer filed this action against the Secretary of HHS in the United States District Court for the Northern District of Georgia seeking review of the agency's decision to deny benefits.
 
 
 4
 The district court issued a consent order remanding the case to HHS for the purpose of obtaining more evidence concerning Meyer's condition, including the testimony of a vocational expert. After reviewing this evidence on remand, the ALJ decided that Meyer was entitled to disability benefits. The district court then issued an order affirming the ALJ's decision.
 
 
 5
 Meyer, as prevailing party in the litigation against the Social Security Administration, moved the district court to award attorney's fees under the EAJA, 28 U.S.C. § 2412(d), in the amount of $11,795--$125 per hour for 57.8 hours by attorney Charles L. Martin, $125 per hour for 13 hours by attorney Lawrence R. Gordon, and $95 per hour for 31 hours by attorney Roger R. Martin for litigating the disability claim. Meyer also moved the district court to award $125 per hour for 21.25 hours by Charles Martin for litigating the attorney's fee claim.[5] The Secretary opposed Meyer's motion, challenging both the reasonableness of the total hours and the hourly rate claimed by Meyer's attorneys. In particular, the Secretary opposed any award of attorney's fees computed at an hourly rate greater than the EAJA's statutory cap of $75 per hour.[6]
 
 
 6
 The district court, on August 3, 1989, issued an order awarding attorney's fees to Meyer. Noting that Meyer's attorneys "handled a difficult case well, and ... should be compensated for the time they expended," the court held that the number of hours requested was reasonable. The court, however, declined to apply the hourly rates requested by Meyer in his motion. Instead, the court applied a rate equal to the statutory cap of $75 per hour. The court explained its rationale for applying this rate as follows:
 
 
 7
 [T]he court's starting point should be the "prevailing market rates" for services of like quality and kind. Market rates for legal services being what they are, these rates will almost always exceed the EAJA $75 cap. But this fact does not authorize an upward adjustment in hourly rates. Jean v. Nelson, 863 F.2d 759 (11th Cir.1988) [, cert. granted, 493 U.S. 1055, 110 S.Ct. 862, 107 L.Ed.2d 947, aff'd 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) ]. The EAJA's special factor formula indicates that Congress thought that $75 an hour was quite enough public reimbursement for attorney's fees, whatever the local or national market rates might be. Pierce v. Underwood [487 U.S. 552], 108 S.Ct. [at] 2451 [2541, 101 L.Ed.2d 490] (1988).
 
 
 8
 The court finds that [Meyer] has clearly shown by affidavit he is entitled to the statutory maximum rate, however, the court is unpersuaded that this case involves a special factor requiring an increase in the statutory maximum.
 
 
 9
 On appeal, Meyer contends that the district court abused its discretion by awarding fees without adjusting the $75 cap upward to account for increases in the cost of living from the EAJA's effective date in 1981.
 
 II.
 
 10
 Under the "American Rule," a prevailing party in a lawsuit is responsible for his or her own attorney's fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).[7] In enacting the EAJA in 1980, Congress sought to provide a statutory exception to the American Rule, available to plaintiffs suing the United States government, under which a district court will order the government to reimburse the prevailing plaintiff for legal costs incurred in maintaining the lawsuit, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); see generally, H.R.Rep. No. 1418, 96th Cong., 2d Sess. 8-10, reprinted in 1980 U.S.C.C.A.N. 4984, 4986-89. The district court's decision whether to award attorney's fees under the EAJA, as well as the amount of such fees, is reviewed under the abuse of discretion standard. Pierce v. Underwood, 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988); Jean v. Nelson, 863 F.2d 759, 769 (11th Cir.1988).
 
 
 11
 A district court, however, does not have unfettered discretion, in determining the hourly rate to apply in a given EAJA case; the express language of the Act provides guidance in determining a fee award, stating in pertinent part:
 
 
 12
 The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.
 
 
 13
 28 U.S.C. § 2412(d)(2)(A) (emphasis added). The EAJA therefore establishes a two-step analysis for determining the appropriate hourly rate to be applied in calculating attorney's fees under the Act. The first step in the analysis, as the district court correctly noted, see supra p. 1032, is to determine the market rate for "similar services [provided] by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1299 (11th Cir.1988).[8] The second step, which is needed only if the market rate is greater than $75 per hour, is to determine whether the court should adjust the hourly fee upward from $75 to take into account an increase in the cost of living, or a special factor.
 
 
 14
 Congress, by specifying the market rate for fees as a factor--a "starting point"--in determining fees under the EAJA, intended to ensure that adequate representation would be available to parties suing the government, Action on Smoking & Health v. C.A.B., 724 F.2d 211, 217 (D.C.Cir.1984), for oftentimes "a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy." H.R. No. 1418, 96th Cong., 2d Sess. 10, reprinted in 1980 U.S.C.C.A.N. at 4988. Congress did not think, however, that extraordinary fees were needed to ensure adequate representation; consequently, it limited public reimbursement of attorney's fees under the Act to $75 per hour, which, according to Congress, represented an hourly rate sufficient to ensure adequate representation in 1980. See Pierce, 487 U.S. at 572, 108 S.Ct. at 2553-54. Under the EAJA scheme, an attorney in 1980 who charged $75 per hour and qualified for EAJA fees could expect 100 percent reimbursement from the government; an attorney who charged $150 per hour, on the other hand, could expect only 50 percent reimbursement. Implicit within the EAJA, therefore, is Congress' intent that if a client cannot afford legal fees in excess of $75 per hour, his or her attorney must provide representation on a pro bono basis to the extent that the attorney's fee exceeded $75 per hour.
 
 
 15
 Congress was aware, however, that increases in the cost of living (inflation) might erode the fee-reimbursement scheme of the EAJA; this is evidenced by the inclusion in the Act of a cost-of-living escalator. See Trichilo v. Secretary of Health & Human Servs., 823 F.2d 702, 705 (2d Cir.1987); see also Baker v. Bowen, 839 F.2d 1075, 1084 (5th Cir.1988), reh'g denied sub nom. Phillips v. Bowen, 848 F.2d 66 (5th Cir.1988); Hirschey v. F.E.R.C., 777 F.2d 1, 5 (D.C.Cir.1985). By allowing district courts to adjust upwardly the $75 hourly fee cap to account for inflation, Congress undoubtedly expected that the courts would use the cost-of-living escalator to insulate EAJA fee awards from inflation; this expectation will not be realized, however, if district courts, without explanation, refuse to consider increases in the cost of living when calculating EAJA fees. This conclusion draws support from the following hypothetical. Assume that in the year 2001 (twenty years after the EAJA's effective date) the cost of living has risen 100 percent from its 1981 level. When a prevailing plaintiff in 2001 moves the district court to award attorney's fees under the EAJA at the market rate (which coincidentally is $150 per hour), the court, while acknowledging that $150 is the appropriate market rate for such legal services, simply states that it does not find a cost-of-living increase justified and, therefore, awards attorney's fees at the $75 "statutory cap." Beyond question, the plaintiff's attorney has borne the burden of the inflation. In order to obtain the same economic benefit in the year 2001 that would attach to a $75 hourly fee in the year 1981, the attorney would have to charge an hourly fee of $150--$75 of which represents compensation for legal services in 1981 dollars and the remaining $75 of which represents compensation for inflation. The district court, by selecting an hourly fee of $75, an amount equaling only the inflation inherent in the attorney's requested $150 hourly fee, effectively has awarded the attorney nothing for skillful and successful representation.
 
 
 16
 In the aforementioned hypothetical, the district court summarily declines to make the cost-of-living adjustment and, in doing so, forsakes any congressional expectation that EAJA fees would be insulated from inflation. It is doubtful that Congress envisioned the district courts exercising their discretion by declining, without explanation, to apply the cost-of-living escalator; such an interpretation would clearly contravene the purpose of the EAJA--providing adequate representation to plaintiffs suing the government. Although it seems difficult to envision a situation in which the district court would not adjust the cap upward for inflation, such a situation theoretically could exist;[9] for example, the rate of inflation might fall to such an insignificant level that the district court in its discretion decides that further litigation over whether to adjust the rate cap for inflation is simply unworthy of the court's, and litigants', time. We need not concern ourselves, however, with this scenario; in the case at hand, no explanation was given when the district court declined to apply the cost-of-living escalator and, therefore, we cannot know upon what rationale the court's decision was based.
 
 
 17
 The district court's decision in Meyer leaves unclear whether the court viewed the $75 hourly fee as the market rate, obviating the need to perform the second step of the EAJA analysis, or whether the court viewed the market rate for attorney's fees to be greater than $75 per hour and simply refused to make the adjustment. The law of this circuit requires that a district court's "order on attorney's fees must allow meaningful review--[to that end,] the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." Norman, 836 F.2d at 1304.[10] Because an explanation is lacking for the district court's decision not to apply the cost-of-living escalator,[11] we remand the case for reconsideration of the proper fee award.[12]
 
 IT IS SO ORDERED.[13]
 
 
 *
 Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 We affirm the district court's EAJA orders in these cases, Glover v. Sullivan, No. 89-8935; Battle v. Sullivan, No. 89-8943; and Findley v. Sullivan, No. 90-8081, for the reasons set forth in note 13 infra
 
 
 [2]
 A disabled person who qualifies under the terms of section 223 of the SSA, 42 U.S.C. § 423, is entitled to receive monthly benefits during the period of his or her disability. The SSA's definition of disability encompasses those persons who are "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Applications for social security disability benefits are filed with the Social Security Administration, which is an administrative arm of the Department of Health and Human Services (HHS or the Department). 20 C.F.R. § 401.110 (1988)
 
 
 [3]
 The initial decision approving or denying benefits is made by a Social Security Administration official with authorization from the Secretary of HHS. See 20 C.F.R. § 404.900(a)(1). An applicant who is dissatisfied with the Department's initial decision--for example, if disability benefits are denied--may request a reconsideration by the Department. Id. at § 404.900(a)(2). If, after reconsideration, the applicant remains dissatisfied with the Department's position, he or she may request a hearing before an ALJ. Id. at § 404.900(a)(3). If the ALJ affirms the denial of benefits, the applicant may appeal the ALJ's decision to the Appeals Council of the Social Security Administration. Id. at § 404.900(a)(4). The judgment of the Appeals Council represents a final determination of the administrative agency and thus becomes the position of the Secretary of HHS for purposes of judicial review. Finally, an unsuccessful applicant may file an action against the Secretary in federal district court to obtain judicial review of the Department's decision. Id. at § 404.900(a)(5)
 
 
 [4]
 Meyer applied for a hearing concerning the denial of benefits; the ALJ, however, on February 21, 1985, dismissed Meyer's application. The ALJ rested his decision on res judicata grounds, i.e., Meyer's lack of disability had been decided in the July 29, 1982 order. Meyer appealed the dismissal to the Appeals Council, which on July 17, 1985, remanded the case for rehearing. After rehearing the case, an ALJ, on September 26, 1985, issued a decision denying benefits. Meyer appealed the decision to the Appeals Council, which again remanded the case for rehearing. On June 4, 1986, an ALJ denied Meyer's application for benefits; the Appeals Council affirmed on December 8, 1986
 
 
 [5]
 Meyer also moved the court to determine, pursuant to section 206 of the SSA, 42 U.S.C. § 406, reasonable attorney's fees to be paid to his counsel out of the past-due benefits award. See infra note 12
 
 
 [6]
 The Secretary alternatively argued that the motion for EAJA fees should be dismissed because the motion was not filed within 30 days after final judgment issued, as required by the statute. See 28 U.S.C. § 2412(d). The district court, in its order granting attorney's fees, rejected the Secretary's timeliness argument, explaining that Meyer's delay was caused by an error in the court's order affirming the Secretary's decision to award benefits. The original order mistakenly stated that Meyer "take nothing" and the Secretary "recover costs of action," thereby requiring that Meyer file a motion to amend the judgment. According to the court, the amended order was the "final judgment" contemplated in the statute; hence, Meyer's motion for EAJA fees was timely filed
 
 
 [7]
 The American Rule is subject to several exceptions, however, including (1) where a fee-shifting statute exists, (2) where the nonprevailing party has acted in bad faith, (3) where the nonprevailing party has willfully disobeyed a court order, and (4) where the plaintiff acts as a "private attorney general." See Chambers v. NASCO, Inc., --- U.S. ----, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27, reh'g denied, --- U.S. ----, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991)
 
 
 [8]
 The House Report that accompanied the EAJA when originally proposed in 1980, underscores Congress' determination that market rates be awarded:
 In general, ... the computation of attorney fees should be based on prevailing market rates without reference to the fee arrangements between the attorney and client. The fact that attorneys may be providing services at salaries or hourly rates below the standard commercial rates which attorneys might normally receive for services rendered is not relevant to the computation of compensation under the Act. In short, the award of fees is to be determined according to general professional standards.
 H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15, reprinted in 1980 U.S.C.C.A.N. at 4994 (emphasis added).
 
 
 [9]
 The Supreme Court has implied that applying a cost-of-living adjustment under the EAJA is next to automatic. In Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), Justice Scalia, writing for the Court on the issue of what constitutes a special factor justifying an upward adjustment of the $75 hourly cap, refers to "the $75 cap (adjusted for inflation)" and "$75 per hour (adjusted for inflation)," id. at 571, 108 S.Ct. at 2553 (emphasis added), as if to suggest that the proper cap on hourly fees under the statute is an inflation-adjusted figure rather than a static rate of $75 per hour. Our disposition of this case, however, does not require that we accept this interpretation of Pierce as part of our holding and, consequently, we decline to do so
 
 
 [10]
 See also Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) ("It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the [attorney's] fee award.")
 
 
 [11]
 We do not mean to say, of course, that a district court may never, within the bounds of its discretion, decline to make an upward departure from the $75 cap to account for inflation; rather, when a court exercises its discretion in this manner, it must state the reason for making such a decision, see supra p. 1034
 
 
 [12]
 In addition to the EAJA claim, Meyer moved the district court to award fees under the SSA in the amount of $8,052--equal to 25% of the past-due benefits awarded. A plaintiff suing the Secretary over the wrongful denial of benefits may so move the court, under 42 U.S.C. § 406, to award attorney's fees payable out of the past-due benefits award. Unlike the EAJA, the SSA does not provide a cap on its hourly fee awards; the total amount of attorney's fees that may be awarded under the SSA, however, is limited to 25% of the past-due benefits awarded. Id
 The district court in the case at hand cited this court's opinion in Watford v. Heckler, 765 F.2d 1562, 1566 n. 5 (11th Cir.1985), as establishing that, while a court is not precluded from awarding fees under both the EAJA and the SSA, the court may not award fees under both statutes where it would result in a double recovery of attorney's fees. Rather than dismissing a claim for fees under the SSA in the Meyer case because it would be a double recovery, we think it more appropriate to dismiss the claim as unnecessary--i.e., the attorney's fees will already be paid by the Secretary pursuant to the EAJA award. See 28 U.S.C. § 2412.
 The SSA provides for attorney's fees out of the plaintiff's award; where, in addition, the plaintiff obtains an award of attorney's fees under the EAJA, the plaintiff is simply reimbursed for the fees that, pursuant to the SSA, are taken out of the past-due benefits. An award of attorney's fees under the EAJA, therefore, makes the issue of whether attorney's fees should be awarded under the SSA for the most part irrelevant--the fees already have been assessed against the Secretary. The limited instance in which attorney's fees under the SSA would have significance (assuming a coexisting EAJA award) is where the district court declines to adjust upwardly the $75 hourly cap on fees available under the EAJA. The court, in theory, could make up the incremental difference between the attorney's requested rate and the $75 EAJA rate through an award under the SSA because the latter act does not contain an hourly fee cap.
 The SSA, however, limits attorney's fees awards to 25% of the total past-due benefits. Here, Meyer's award of EAJA fees ($9,228.75) exceeded 25% of the total past-due benefits by $1,176.75 (the district court awarded Meyer $32,208 in past-due benefits, 25% of which equals $8,052). The district court, therefore, correctly declined to award a SSA fee. Although the facts of this case suggest that the district court will have no greater cause on remand to award any such fee, we merely note this possibility to clarify the interplay between the two statutes.
 
 
 [13]
 We affirm the district court's EAJA orders in the consolidated appeals because, unlike the district court in Meyer, the district court in each of the other three cases determined that the market rate fell within a range of hourly fees--a range that included $75. In Glover v. Sullivan, No. 89-8935, the district court found the applicable market rate to range from $65 to $75 per hour and then awarded fees at $75 per hour. See also Battle v. Sullivan, No. 89-8943 (same) (both cases were decided by the same judge on the same day). Although both Glover and Battle contend on appeal that the district court erred by establishing the market rate in their respective cases by reference to a prior decision of that court, Green v. Bowen, C.A. 84-338-2-MAC (M.D.Ga. Apr. 13, 1988), their claims are without merit. The Secretary, in opposing the plaintiffs' applications for attorney's fees, attached a copy of the Green opinion and cited Green as establishing the market rate at $70 per hour; the plaintiffs, therefore, were able to attack the relevance of the market rate set in Green in the district court. Absent an abuse of discretion, we will not overturn a district court's assessment of the market rate for fees. Finding no such abuse, we decline the plaintiffs' invitation effectively to substitute our perception of the market rate for that of the district court
 In Findley v. Sullivan, No. 90-8081, the district court accepted a magistrate's recommendation that fees be awarded at $75 per hour; the magistrate found the appropriate market rate to range from $55 to $75 per hour. Findley argues on appeal that the district court incorrectly applied the second step in the EAJA fee analysis by refusing to make a cost-of-living adjustment to the $75 hourly fee that was awarded. This argument is also without merit because the $75 rate applied by the district court was within the assessed range of appropriate market rates--the district court simply did not need to determine whether the statutory fee cap of $75 per hour required upward adjustment because the appropriate market rate did not exceed the fee cap. Again, we will not overturn on appeal the district court's assessment of a market rate absent an abuse of discretion, which we do not find.