**In re TOM CARTER ENTERPRISES, INC., Debtor.**

**Curtis B. DANNING, James J. Joseph, co-trustees, Plaintiffs,**

**v.**

**William R. LUMMIS and First Interstate Bank of Nevada, N.A., co-special administrators for the estate of Howard Robard Hughes, Jr., deceased, Defendants.**

**Bankruptcy No. SA 83–05401 JR.
Adv. No. SA 84–0624 JR.**

United States Bankruptcy Court, C.D. California.

Sept. 16, 1993.

Adam Walinsky of Kronish, Lieb, Weiner & Hellman, New York City, for plaintiffs.

Susan J. Nolting, Dept. of Justice, Civ. Div., Washington, DC, for defendants.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

### INTRODUCTION

This matter is before the court on Plaintiffs'[1] motion for a determination of attorney's fees and costs pursuant 28 U.S.C. § 2412, the Equal Access to Justice Act ("EAJA"). On June 21, 1993, after a hearing on this motion, I took the matter under submission.

### JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (1991) (the district courts shall have original and exclusive jurisdiction of all cases under title 11), 28 U.S.C. § 157(a) (1991) (authorizing the district courts to refer all title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF FACTS

On December 8, 1983, Tom Carter Enterprises, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Curtis Danning and James Joseph were appointed Chapter 11 trustees for Debtor ("Co-trustees").

On July 20, 1984, Plaintiffs filed a complaint in the District Court for the District of Columbia (the "D.C. District Court") against the Director of the Administrative Office of the United States Courts (the "Director"), challenging the Director's declaration that the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act") violated the Appointments Clause of the Constitution (the "Jurisdictional Issue").

Prior to filing its petition, Debtor had entered into a written agreement to purchase real property located in the state of Nevada from the Estate of Howard Hughes, Jr. (the "Hughes Estate"), and had paid certain sums towards that purchase.

On September 20, 1984, Co-trustees commenced an adversary proceeding in the bankruptcy court for a temporary restraining order and preliminary injunction to prohibit the Hughes Estate from taking actions that would adversely affect the interest of the Co-trustees under the purchase agreement. Judge Ralph G. Pagter issued a temporary restraining order and set a preliminary injunction hearing.

On November 26, 1984, before the preliminary hearing was held, the Hughes Estate brought a motion before the Central District Court of California (the "C.D. District Court") to withdraw the reference to this court. The Department of Justice (the "Government") and Plaintiffs subsequently intervened in the proceeding before the C.D. District Court.

---

1. The Honorable Keith M. Lundin of the United States Bankruptcy Court for the Middle District of Tennessee; The Honorable Mark B. McFeeley, Chief Judge of the United States Bankruptcy Court for the District of New Mexico; The Honorable William L. Norton, Jr. of the United States Bankruptcy Court for the Northern District of Georgia; The Honorable George C. Paine, II, Chief Judge of the United States Bankruptcy Court for the Middle District of Tennessee; The Honorable Hugh Robinson, Jr. of the United States Bankruptcy Court for the Northern District of Georgia; and The Honorable Arthur N. Votolato, Jr. of the United States Bankruptcy Court for the District of Rhode Island.

On December 7, 1984, the C.D. District Court, in resolving the Jurisdictional Issue, upheld the constitutionality of the 1984 Act and denied the Hughes Estate's motion to withdraw the reference to the bankruptcy court. *In re Tom Carter Enterprises, Inc.*, 44 B.R. 605, 609–10 (C.D.Cal.1984).

Throughout 1984, in addition to this case, the Government and Plaintiffs intervened and filed *amici curiae* briefs in six other cases throughout the country where the Jurisdictional Issue was in contest (together referred to as the "Related Cases").[2]

Thereafter, Co-trustees and the Hughes Estate entered into a settlement agreement. On February 6, 1987, this court issued an order dismissing the adversary proceeding pursuant to a Stipulation of Settlement ("1987 Order").

On November 29, 1988, the D.C. District Court proceeding was dismissed as moot since Plaintiffs had prevailed in the seven district courts in which they had intervened on the Jurisdictional Issue.

On February 15, 1989,[3] Plaintiffs filed an EAJA fee application in the D.C. District Court for the entirety of their work in the D.C. District Court proceeding and the Related Cases. On August 8, 1990, the D.C. District Court denied Plaintiffs' fee request, finding that the Plaintiff's had not prevailed and that the Director's position was substantially justified.

Plaintiffs appealed the decision to the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). On December 1, 1992, the D.C. Circuit reversed the D.C. District Court, finding that the Director's position had not been substantially justified and Plaintiffs were the prevailing parties in all seven actions. *Lundin v. Mecham*, 980 F.2d 1450 (D.C.Cir.1992). Accordingly, the court held that Plaintiffs had satisfied the statutory requirements for an award of EAJA fees under 28 U.S.C. § 2412.

The D.C. Circuit, however, held that it did not have authority to award fees for work performed outside of its jurisdiction, and that Plaintiffs would have to return to each of the separate federal districts in which the Related Cases were litigated to obtain the EAJA fees and costs incurred for the work performed on the Jurisdictional Issue.

Pursuant to the decision in *Lundin*, on April 14, 1993, Plaintiffs filed a fee application (the "Application") with this court seeking their EAJA fees and costs for work performed in this case on the Jurisdictional Issue.

## DISCUSSION

I must decide whether the Application was timely filed under EAJA and if so, the amount of the fee.

EAJA provides, in pertinent part, that:

(A) a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(B) [a] party seeking an award of fees and other expenses shall, *within thirty days of final judgment in the action*, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award.... The party shall also allege that the position

---

2. *In re Moody*, 46 B.R. 231 (M.D.N.C.1985); *In re Production Steel, Inc.*, 48 B.R. 841 (M.D.Tenn.1985); *In re Moens*, Civ. No. 84–4109 (C.D.Ill. Feb. 21, 1985), *vacated in part*, 800 F.2d 173 (7th Cir.1986); *In re Koerner*, 800 F.2d 1358 (5th Cir.1986); *In re Benny*, 44 B.R. 581 (N.D.Cal. 1984), *dismissed in part, aff'd in part*, 791 F.2d 712 (9th Cir.1986), *appeal after remand*, 812 F.2d 1133 (9th Cir.1987); *In re Tom Carter Enterprises, Inc.*, 44 B.R. 605 (D.C.Cal.1984).

3. After dismissing the complaint for declaratory relief, the D.C. District Court Chief Judge John Garrett Penn gave Plaintiffs until January 6, 1989 to file their EAJA fee requests. Chief Judge Penn later extended that deadline until February 15, 1989.

of the United States was not substantially justified. (Emphasis added).

28 U.S.C. §§ 2412(d)(1)(A) and (B).

Section 2412(d)(1)(A) is satisfied since *Lundin* concluded that Plaintiffs were the prevailing parties in all the actions and that Director's actions were not substantially justified. *Lundin*, 980 F.2d at 1463.

The Government argues that I should deny the Application since Plaintiffs have not met the requirements of § 2412(d)(1)(B). The Government asserts that the final judgment was the 1987 Order and the Application was untimely since it was submitted on April 14, 1993, well beyond the 30 day EAJA requirement. Plaintiffs respond that the November 29, 1988 D.C. District Court order dismissing the proceeding on the Jurisdictional Issue is the appropriate final judgment.

■ EAJA defines final judgment as "a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G). A final decision generally "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). The Ninth Circuit has held that the 30 day period for filing a fee application under EAJA begins to run when the right to appeal has lapsed, or after completion of appellate proceedings. *Brock III v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1360 (9th Cir. 1985) (*citing Taylor v. United States*, 749 F.2d 171, 174 (3d Cir.1984)). Final judgment for purposes of EAJA, therefore, is a judgment which is no longer contestable through the appellate process.

Here, the 1987 Order represented a dismissal of the adversary proceeding in this court after a settlement between Co-trustees and the Hughes Estate. The adversary proceeding sought to enjoin Lumis and First Interstate Bank of Nevada from taking actions that would adversely affect the interest of Co-trustees under the purchase agreement between Debtor and the Hughes Estate. The Jurisdictional Issue was a collateral matter since it was raised solely to withdraw the reference to the bankruptcy court. The Jurisdictional Issue did not relate to the merits of the adversary proceeding.

The D.C. District Court complaint was filed to determine the Jurisdictional Issue. The case was dismissed on November 29, 1988 after the D.C. District Court held that the Jurisdictional Issue was moot since the Plaintiffs had prevailed in all the Related Cases. An appeal to the court of appeals must be filed within thirty days after the entry of the judgment.[4] The D.C. District Court order dismissing the case was not appealed. Pursuant to *Catlin*, since no appeal was filed, the D.C. District Court order became final on December 29, 1988.

Government argues that even if the D.C. District Court order became final on December 29, 1988, the Application is still untimely because it was not filed with this court until April 14, 1993. Plaintiffs' respond that they timely filed their fee application on February 15, 1989 pursuant to Chief Judge Penn's order setting January 6, 1989 as the date to file EAJA fee requests, and his subsequent extension of this date to February 15, 1989.

■ Plaintiffs applied for EAJA fees and costs in the D.C. District Court rather than here since that was the court the Plaintiffs originally filed their complaint for declaratory relief relating to the Jurisdictional Issue. This was understandable. The D.C. Circuit Court, however, decided that the EAJA fees should be allocated by the courts in the districts where the Related Cases arose. Plaintiffs did not file their fee request in the D.C. District Court for a bad faith reason or to circumvent the requirements of EAJA. Certainly, the filing of Plaintiffs' fee application in the D.C.

---

**4.** 28 U.S.C. § 2107(a). Section 2107(a) provides that:

> Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree.

District Court placed the Government on notice that Plaintiffs were seeking their EAJA fees for the work done in the Related Cases. Under the circumstances, it would be grossly unfair to bar recovery of Plaintiffs' EAJA fees and costs based upon the Government's technical argument. Accordingly, I find that the Application was timely filed because it relates back to Plaintiffs' timely filing of its EAJA fee application in the D.C. District Court.

■ Finally, the Government asserts that bankruptcy judges lack jurisdiction to award fees and costs under EAJA. I disagree. The Government bases its argument upon *In re Davis*, 899 F.2d 1136, 1140 (11th Cir.1990). In that case, the 11th Circuit held that the bankruptcy court lacked jurisdiction to award fees under EAJA since bankruptcy judges are not Article III judges. The court concluded that EAJA's reference to "any court having jurisdiction of th[e] action," and "court[s] of the United States as defined in § 28 U.S.C. § 451" does not include non-Article III judges. *Id.* at 1139–40. However, the majority of courts have taken a contrary view. *O'Connor v. U.S. Dept. of Energy*, 942 F.2d 771, 774 (10th Cir.1991); *Matter of Esmond*, 752 F.2d 1106, 1109 (5th Cir.1985); *In re Shafer* 146 B.R. 477, 481 (D.Kan.1992); *In re Hagan*, 44 B.R. 59, 65 (Bankr.D.R.I. 1984).

In *O'Connor*, the court concluded that a bankruptcy court is a "court" under EAJA and that nothing in the language of the statute suggests otherwise.

> The term "court" is generally defined in its plain, ordinary, and every day meaning as "[a] person or group of persons whose task is to hear and submit a decision on cases at law." While courts may be classified according to their means of creation as either constitutional (Article III) or legislative (i.e., Bankruptcy), Congress chose not to modify the word "court" when it drafted 28 U.S.C. § 2412(d)(1)(A). Had it meant to restrict the use of this provision to constitutional courts, Congress could have done so. The broad language employed by Con-

gress, in its ordinary usage, would include the bankruptcy court.

> We also think it significant that the phrases utilized in § 2412(d)(1)(A) are simply "a court" and "any court" as opposed to the phrase "court of the United States" as used in § 1920 and defined in § 451.

*O'Connor*, 942 F.2d at 773. I adopt the reasoning of *O'Connor* and find that I do have jurisdiction to consider the Application.

Turning to the Application, Plaintiffs' counsel have incurred a total of $21,899.54 in attorney's fees and $3,652.74 in costs. EAJA states that attorney's fees shall be based upon the prevailing market rates for the kind and quality of the services furnished, but shall not be awarded in excess of $75 per hour unless the court determines that there has been an increase in the cost of living, or other special factors exist, such as the limited availability of qualified attorneys. 28 U.S.C. § 2412(d)(1)(C), (2)(A).

The $75 per hour rate was suggested when EAJA was enacted in 1981. Several courts have increased the $75 rate to reflect a cost of living adjustment. *See e.g., Wilkett v. Interstate Commerce Commission*, 844 F.2d 867, 874 (D.C.Cir.1988); *Oklahoma Aerotronics v. United States*, 943 F.2d 1344 (D.C.Cir.1991); *Abel Converting, Inc. v. United States*, 695 F.Supp. 574, 579 (D.D.C.1988).

In *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court considered whether an hourly rate in excess of $75 was justified. The Supreme Court held that "special factors" such as the novelty and difficulty of issues, the undesirability of the case, the work and ability of counsel, the results obtained, customary fees and awards in other cases, and the contingent nature of the fee, all of which are factors of broad and general application, may not be relied upon by a court as special factors for purposes of EAJA. *Id.* at 568, 108 S.Ct. at 2552. The Court stated that:

> ... [t]he "special factor" formulation suggests Congress thought that $75 an hour was generally quite enough public

reimbursement for lawyers' fees, whatever the local or national might be.... We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.

*Id.* at 572, 108 S.Ct. at 2554.

Plaintiffs ask for fees at an hourly rate of $130 because they believe their counsel had "distinctive knowledge or specialized skill needful for the litigation." Here, I agree that Plaintiffs' counsel had specialized knowledge in the area of bankruptcy jurisdiction. Counsel had lectured extensively in the area. The $75 hourly rate in EAJA was set by Congress in 1981. Since that time, the cost of living has increased substantially. Accordingly, I believe that "special factors" justify a rate enhancement under EAJA, and I approve a $130 hourly rate.

Plaintiffs' counsel has submitted extensive and detailed records of the work performed during the course of this litigation. Plaintiffs seek EAJA fees for a total of 140.36 hours to be calculated at a rate of $130 per hour. Accordingly, I award Plaintiffs $18,246.80 in fees and $3,652.74 in costs, for a total of $21,899.54.

### CONCLUSION

The date of the final order for determining an award of attorney's fees under EAJA was December 29, 1988. The Application, filed April 14, 1993, relates back to Plaintiffs' timely fee application filed in the D.C. District Court on February 15, 1989. The Application was, therefore, timely filed under EAJA. This court has jurisdiction to make an EAJA award. Plaintiffs are entitled to $18,246.80 in fees and $3,652.74 in costs.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.