**In re Earl J. MOULTON, Wanda Sue Moulton, Debtors.**

**Earl J. MOULTON, Wanda Sue Moulton, Plaintiffs,**

**v.**

**UNITED STATES of America, DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, D.W. Rucker and P. Dougherty, Defendants.**

**Bankruptcy No. 80–822–8P3.
Adv. No. 93–733.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 19, 1996.

Malka Isaak, Tampa, FL, for Plaintiffs.

Mary Apostolakos Hervey, Trial Atty., U.S. Dept. of Justice, Washington, DC, for Defendant (USA).

**ORDER ON MOTION FOR ASSESS-MENT OF ATTORNEY'S FEES (# 12) AND ORDER ON SUPPLE-MENT TO MOTION FOR ASSESS-MENT OF ATTORNEY'S FEES (# 16)**

ALEXANDER L. PASKAY, Chief Judge.

On April 14, 1995, in its Order on Motion for Assessment of Attorney's Fees, this Court described the latest chapter in the ongoing battle between Earl J. and Wanda Sue Moulton (Debtors) and the United States (Government). The present matter is hopefully the conclusion of that saga and involves a determination of the correct amount of attorney's fees to be awarded to the Debtors as reimbursement for legal fees they incurred in successfully defending the rights granted them by the discharge upon completion of their Chapter 13 Plan. The April 14th Order found that the IRS violated the permanent injunction granted by the discharge, that the Debtors were the prevailing party and were entitled to an award of damages and attorney fees. The Order scheduled a final evidentiary hearing to determine the Debtors' right to compensation, including the proper amount to be allowed to Ms. Isaak for services rendered to the Debtors in connection with the ongoing litigation with the Government.

At the properly noticed and rescheduled final evidentiary hearing, Ms. Isaak failed to timely appear; but when she did appear she claimed that she did not receive the notice of the rescheduled evidentiary hearing, and as a result, did not have any witnesses. She proffered that she would introduce evidence as to her superior skill, specialized knowledge of bankruptcy law, and related evidence to support her request to be compensated for her services at a rate of $225.00 per hour. Although both counsel for the Plaintiff and counsel for the Government were given an opportunity to submit legal authorities in support of and in opposition to the Motion under consideration, the Court received only one submission from the Government.

The record in this long drawn-out case reveals that Earl J. and Wanda Sue Moulton (Debtors) successfully completed their Chapter 13 case and obtained their discharge pursuant to § 1328 of the Code. In due course, their Chapter 13 case was closed. Among the debts which were discharged were the following pre-petition obligations owed by the Debtors:

§ 6672 of the Internal Revenue Code penalties for the period ending 6/30/80; and

§ 6672 for the period ending 9/30/82.

Notwithstanding, on May 15, 1990, the Internal Revenue Service (IRS) filed a Notice of Federal Tax Lien for the § 6672 penalties which were discharged in the total amount of $25,623.65. In order to protect the benefits of their discharge and stop any further collection efforts by the IRS of the discharged

debts, the Debtor sought to reopen their closed case, and after the case was reopened, sought a contempt citation against the IRS and imposition of sanctions. On October 16, 1991, this Court entered an Order finding the IRS in contempt for the willful violation of the permanent injunction granted to discharged debtors by § 524(a)(4) of the Code and scheduled a hearing for November 14, 1991, to consider the amount of sanctions warranted under the circumstances. Even though the contempt proceeding was already pending, the IRS persisted in its collection efforts by issuing a final Notice of Intention to Levy on September 14, 1991. At the November 14, 1991, hearing counsel for the Government assured the Court, the Counsel for the Debtor and the Debtors that steps had been taken to promptly cease any further collection efforts of the discharged debts and prevent any further collection activities.

The Court took the matter of sanctions under advisement. While the matter was still under advisement the following events took place:

On December 17, 1991, Mr. Moulton received a certified letter from Coast Bank informing him that the IRS served a notice of levy on the Debtor's bank account and the Bank honored the levy and placed $1,359.28 in a general ledger account until January 2, 1992, to be paid over to the IRS within 21 days thereafter. A copy of the Notice Of Levy was included in the letter sent to the Bank, which also included a Debit Advice. At the time the account of the Debtor was frozen, the Debtor had several checks outstanding including two mortgage payments one to Williamsburg Mortgage Services, and the other to Ford Motor Credit Co. The outstanding checks also included one for a car payment to GMAC. Obviously, the Debtors were utterly stunned by the news, especially since they felt assured after the November 14th hearing that they would no longer be harassed by the IRS. Of course, they had to request aid from their attorney Ms. Isaak, who was successful in rescinding the levy and ultimately freezing the funds from the levy to be re-credited to the Debtor's account.

On October 8, 1992, this Court entered an Order and awarded sanctions against the Government for the violation of the permanent injunction and ordered the Government to pay $4,659.00 to the Debtors to compensate them for the legal expenses they incurred as the result of the Government's contumacious conduct. On October 19, 1992, the Government filed its Notice of Appeal challenging this Court's October 9th Order. Before the appeal was resolved, the Government and the Debtors settled the Controversy and the Government paid the Debtors the amount awarded to them by the October 8th Order and the appeal was dismissed by the District Court.

Contrary to the Debtor's expectations that peace had finally arrived, their expectations went up in smoke when Mrs. Moulton received a letter from the IRS dated August 3, 1993, which included a Final Notice (a Notice of Intention to Levy) requesting a payment of $25,159.24. On October 7, 1993, an IRS agent came to the Moultons' residence but was told to contact their attorney, Ms. Isaak.

It appears that during this period, the Debtors were making monthly payments to the IRS on a totally unrelated obligation which involved their 1991 income tax liability which was not discharged. On October 18, 1993, the Debtors received a letter from the IRS regarding their alleged failure to make monthly payments pursuant to the arrangement agreed upon with the IRS. In fact, the Debtors were current on their monthly payments. They later learned that the alleged default was due to the fact that their monthly payments in the amount of $350 made during August and September, 1993, were applied by the IRS to the "$25,159.24 civil tax penalty," the tax which was discharged on January 28, 1988.

Of course this unexpected and, needless to say, extremely disturbing development again required the Debtors to seek redress from the continuing collection harassment of the Debtors by the IRS. Accordingly, they again requested that Ms. Isaak seek permanent relief from any further collection action of the discharged debt.

On October 22, 1993, Ms. Isaak instituted the present adversary proceeding by filing

her two-count Complaint. In Count I of the Complaint, the Debtors seek permanent injunction, relief which is theoretically not necessary since they obtained a permanent injunction when they received their discharge in 1988. In Count II, the Debtors seek the entry of a Judgment finding "the United States of America, Department of Treasury, Internal Revenue Service" in contempt of Court and an award for contempt, fines, sanctions, and damages in favor of the Debtors and against the United States of America, Department of Treasury, Internal Revenue Service.

This leaves for consideration the amount of attorney's fees which should be awarded to Ms. Isaak. It is the Government's position that attorney's fees are limited to $75.00 per hour by 28 U.S.C. § 2412(d)(2)(A), which rate cannot be increased except for adjustment for increase in cost of living or for a special factor, such as limited availability of qualified attorneys for the proceeding involved which would justify a higher fee.

As noted earlier, this Court only received a post-trial brief from the Government and none from counsel for the Debtors. The Government submission is concentrated exclusively to the applicability of the Equal Access to Justice Act (EAJA) and its limitation on the award but did not address the availability of the precise relief sought that is "the fines, sanctions, and damages." Clearly, if EAJA applies to litigation, no fines or sanctions can even be considered as the amended version of § 106, which waived the sovereign immunity and authorized the Court to "issue against a governmental unit an order, process, or judgment ... including judgment awarding a money recovery," but expressly prohibited the award of punitive damages.

There is nothing in this record which would support any damage award to the Debtors. As far it appears, the improper application of the monthly payments have been corrected and the proper credit has been accorded to the installment payment obligation of the Debtors. In addition, the Debtors already have been compensated for all damages they suffered for the improper levy on their bank account by the award of $4,659.00, which has been paid. This leaves for consideration the award for attorney fees to Ms. Isaak which is governed by the limitations set forth in EAJA.

The Bankruptcy Reform Act of 1994 (Pub. L.No. 103–394, 108 Stat. 4106 1994) amended § 106 of the Bankruptcy Code and abrogated sovereign immunity with respect to specified actions under several sections of the Code and authorized the Bankruptcy Court to issue against a governmental unit, orders, processes, or judgments awarding money recovery but not including an award for punitive damages. § 106(a)(3). The amendment further provides that any award must be consistent with the limitation of 28 U.S.C. § 2412(d)(2)(A). This Section provides:

(2) For the purposes of this subsection—

(A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special favor such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee).

Section 2412(d)(2)(A) of the EAJA requires a two-part analysis. First, it requires a determination of the prevailing market rate; second, if the market rate exceeds the $75.00 per hour cap fixed by the Statute, the court may consider whether or not an upward adjustment is warranted. *Meyer v. Sullivan,* 958 F.2d 1029 (11th Cir.1992). The cost of living adjustment was designed to insulate the fee awards from the effects of inflation, but the adjustment is not mandatory. *Meyer v. Sullivan, supra.* The cost of living adjustment, if applied, is based on the

Consumer Price Index (C.P.I.). The appropriate index is not the personal component index but the "all items" index. *Dewalt v. Sullivan,* 963 F.2d 27 (3rd Cir.1992); *Sullivan v. Sullivan,* 958 F.2d 574 (4th Cir.1992). The appropriate formula is:

$$\frac{75 \times \text{the recent C.P.I.}}{\text{C.P.I. as of 10/1/81}}$$

*Bullfrog Films, Inc. v. Catto,* 815 F.Supp. 338 (C.D.Cal.1993). In determining the recent C.P.I. rate, it is appropriate to use the rate when the services were rendered and not when the award is made. *Marcus v. Shalala,* 17 F.3d 1033 (7th Cir.1994). This Court is satisfied that it is appropriate to make an adjustment of the statutory cap for cost of living increase. The C.P.I. rate on October 1, 1981 was 93.4. In the present instance, services were rendered between October 1993 and October 1994, during which period the C.P.I. ranged from 145.7 to 149.5. According to the formula, the adjustment for inflation cannot exceed a range of 116.99 (75 × 145.5 divided by 93.4).

The statute also permits an additional adjustment upward from the statutory cap of $75.00 per hour rate for special factors. The Statute enumerates only one special factor which is the limited availability of qualified attorneys. Clearly this special factor is merely illustrative and not the only one which a court may consider if further fee enhancement is warranted. The limited availability factor has been construed to refer to situations where the attorney is required to have specialized knowledge such as patent law or foreign law. *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). In *Pierce,* the District Court construed the special factor enumerated in the Statute to mean "the limited availability for the proceedings involved." The Supreme Court rejected this construction by stating that if the term means that lawyers skilled and experienced enough to try cases are in short supply, it would effectively eliminate the $75.00 cap since the prevailing market rates for the kind and quality of services furnished are determined by the relative supply of that kind and quality of services. The Supreme Court in *Pierce, supra,* stated that the term refers to the attorney having some distinctive knowledge or specialized skill needed for the litigation in question as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. The Supreme Court also rejected the following special factors which would warrant fee enhancement found to be valid by the District Court: "novelty and difficulty of issues;" "undesirability of the case;" "work and ability of counsel;" and "the results obtained." The Supreme Court characterized these as little more than routine reasons why market rates are what they are. It also noted that customary fees and awards is not even a routine reason for market rates rather than a description of the market rates. The Court concluded that the District Court abused its discretion relying on these factors. It also concluded that the contingent nature of the fee a non-factor. The Court noted that once the $75.00 cap is exceeded neither a client paying a reasonable hourly rate nor the client paying a reasonable contingent fee is fully compensated because the Statute was not designed to reimburse reasonable fees without limit.

The Eleventh Circuit Court of Appeals was presented with the same issue which is under consideration in the present instance in the case of *Jean v. Nelson,* 863 F.2d 759 (11th Cir.1988), a case decided after the decision of the Supreme Court in *Pierce.* Although *Jean* was an extremely complex and protracted litigation and involved numerous issues not relevant here, it also involved the special factors which the courts may consider when an allowance is sought under EAJA. The Court noted first that, given that the EAJA constitutes a partial waiver of the sovereign immunity of the Government, the Act must be strictly construed if the statutory cap is exceeded and any enhancement must be because it is permitted by the Act. *Library Of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Both the Supreme Court and the Eleventh Circuit discussed in great detail factors which are not special factors warranting enhancement, but failed to offer any specifics which might be considered by the Court when enhancement is sought. The Eleventh Circuit in *Jean* indicated, however, that the Government's unusually litigious position might con-

stitute a special factor. In a footnote, the *Jean* case compared the requirement to impose sanctions pursuant to Fed.R.Civ.P. 11 which requires the court to distinguish between contentions that have often have no "reasonable basis in law or fact" and those injected without any purpose but to harass. *Jean*, 863 F.2d 759, 776 at n. 13. The Court noted that the Rule was meant to eliminate frivolity and harassment but not attorney zealousness, emphasizing however that nothing "routine" or "generally applicable to a broad spectrum of litigation" can count. *Pierce* at 570–72, 108 S.Ct. at 2553.

▮ Applying the foregoing principles to the matter of proper allowance to Ms. Isaak for services rendered, it is clear the claimed specialized knowledge is not a recognizable factor. To recognize knowledge, even a thorough knowledge of the Bankruptcy Code, would entitle every bankruptcy practitioner to qualify for enhancement when they seek an allowance against the Government under the EAJA. The Eleventh Circuit in *Jean* indicated that a special expertise in immigration law might qualify for enhancement coupled with the fact that at least one of the attorneys is fluent in French and Haitian Creole which was crucial to the attorney's work in communicating with and preparing the testimony of the Haitian Plaintiffs. The Court indicated that on remand the district court may consider these as "special factors." It also should be noted that the dissent did not consider that attorneys practicing immigration law have any "distinctive knowledge or specialized skill needful for the litigation involved." The Fifth Circuit in *Powers v. Commissioner*, 43 F.3d 172 (5th Cir.1995) did not consider specialization to qualify as a "special factor." Be that as it may, it would be far-fetched indeed to accept the proposition that specialization in bankruptcy law in the 80's and in the 90's, especially in districts with high volume, may fairly be equated with immigration law or special expertise in native American law. *See, Hoopa Valley Tribe v. Watt*, 569 F.Supp. 943 (N.D.Cal.1983). However, this Court is satisfied that the continuing litigation and defense by the Government of totally indefensible conduct of the IRS may properly be considered as "special factor," sufficient to warrant an enhancement in addition to the application of the C.P.I. to the statutory cap.

Having considered the principles discussed earlier which a court may take into account in making a fee award to an attorney under EAJA, this Court is satisfied that in this instance, it is appropriate to enhance the $75 statutory cap with the applicable C.P.I. pursuant to the formula outlined. In addition, this Court is also satisfied that based on the utterly inexcusable and egregious conduct of the IRS, there is a cognizable "special factor" in this instance. *See Jean v. Nelson, supra* at 774. Based on the foregoing, this Court is satisfied that the appropriate hourly rate is $150 or double the statutory cap of $75.00.

One last comment. The Government, in its supplemental opposition, challenged Ms. Isaak's right to compensation of certain services which, according to the Government, were inadequately described, unreasonable in terms of the time expended, consisted of multiple services set forth in one time entry (lumping), sought compensation for some items which are overhead and thus not compensable and also for some services which were not required because of anything which was done by the Government but rather were due to the counsel's failure to act in a diligent fashion.

As noted before, this Court did not receive any submission by way of a response to these challenges of the Government, and thus this Court is required to peruse Ms. Isaak's request without the benefit of her comments on the request for allowance. Having considered the entire record, this Court is satisfied that the total compensable hours are 15 hours at the rate of $150 per hour enhanced by the applicable C.P.I., or a total of $3,505.08.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Assessment of Attorney's Fees and the Supplement to Motion for Assessment of Attorney's Fees be, and the same are hereby, granted and a reasonable fee for services rendered during the applicable time period by Malka Isaak is hereby determined to be $3,505.08 and reasonable expenses incurred during the rele-

vant time period are hereby determined to be $18.80, for a total reimbursement of $3,523.88. It is further

ORDERED, ADJUDGED AND DE-CREED that the Defendant shall pay the sum of $3,523.88 to the attorney for the Debtors, Malka Isaak, within 30 days of the date of entry of this Order.

DONE AND ORDERED.