In re Raymond D. HEADRICK,
Cynthia J. Headrick,
Debtors.

Raymond D. Headrick, Cynthia
J. Headrick, Plaintiffs,

v.

State of Georgia, Department
of Revenue, Defendant.

Bankruptcy No. 94–12007.
Adversary No. 96–01027A.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

Nov. 30, 2001.

542

Scott J. Klosinski, Augusta, GA, for debtors.

Barnee C. Baxter, Augusta, GA, trustee.

## *ORDER*

JOHN S. DALIS, Chief Judge.

Plaintiffs Raymond D. Headrick and Cynthia J. Headrick ("the Headricks") seek to recover actual damages for attorney fees and legal expenses incurred, and unspecified injuries from the State of Georgia Department of Revenue ("Georgia") for violation of the 11 U.S.C. § 362 automatic stay. The Headricks request $48,393.45 in attorney fees and expenses and $2,000 for other unspecified injuries. I find that the Headricks may recover $38,502.23 in attorney fees and expenses in accordance with the limitations of 11 U.S.C. § 106(a) [1]. I also find that the Headricks are entitled to nominal actual damages of $100 each for unspecified injuries, for a total of $200. The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(O) and 28 U.S.C. § 1334.

Although the facts of this case have been outlined in previous orders by various courts, the following facts and procedural history are relevant to the pending matter. Raymond D. and Cynthia J. Headrick filed for chapter 13 bankruptcy protection on December 28, 1994. The Georgia Department of Revenue then filed a proof of claim for state income taxes, which included the 1991 tax liability. On October 24, 1995, Georgia sent the Headricks an "Official Assessment and Demand for Payment" for the 1991 tax liability. Two months later, on December 21, 1995, Georgia sent the Headricks a second document titled "Collection Notice" for the 1991 tax liability, which demanded payment and threatened collection by levy, garnishment, or attachment. The Headricks filed this adversary proceeding against Georgia on March 11, 1996, alleging that these collection attempts violated the automatic stay of 11 U.S.C. § 362.

In response to this adversary complaint, Georgia filed a motion for summary judgment which challenged the constitutionality of 11 U.S.C. § 106(a). *Headrick v. State of Georgia Dept. of Revenue (In re Headrick)*, 200 B.R. 963, 964–65 (Bankr. S.D.Ga.1996). I held that 11 U.S.C. § 106(a) was constitutional and therefore denied Georgia's motion for summary judgment. *Id.* at 967. On Georgia's motion to alter and amend my previous order,

---

**1.** 11 U.S.C. § 106(a) reads in pertinent part:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

I reviewed and reaffirmed my decision in *Headrick v. State of Georgia Dept. of Revenue (In re Headrick)*, 203 B.R. 805, 806–07 (Bankr.S.D.Ga.1996). Georgia appealed this decision, and the matter was consolidated with the case of *State of Georgia Dept. of Revenue v. Burke (In re Burke)*, Ch. 7 Case No. 92–11482, Adv. No. 95–01050A (hereinafter *"Burke"*). The District Court affirmed, holding that 11 U.S.C. § 106(a) validly abrogated Georgia's Eleventh Amendment immunity. *State of Georgia, Dept. of Revenue v. Burke*, 1997 WL 33125720, *3 (S.D.Ga. 1997). Georgia appealed the District Court's decision to the Eleventh Circuit Court of Appeals, who held that Georgia waived its Eleventh Amendment immunity by filing a proof of claim and that the bankruptcy court retained jurisdiction over Georgia in order to enforce the automatic stay. *State of Georgia, Dept. of Revenue v. Burke (In re Burke)*, 146 F.3d 1313, 1317 (11th Cir.1998), *cert denied*, 527 U.S. 1043, 119 S.Ct. 2410, 144 L.Ed.2d 808 (1999).

On remand, both parties filed summary judgment motions as to the violation of the automatic stay. Summary judgment was denied, and the matter was tried before me on June 22, 2001. *Headrick v. State of Georgia Dept. of Revenue (In re Headrick)*, Ch. 13 Case No. 94–12007, Adv. No. 96–01027A (Bankr.S.D. Ga. Augusta Division, March 29, 2001)(J. Dalis). At trial, I held that the document sent by Georgia on October 24, 1994 did not violate the automatic stay because of the exception of 11 U.S.C. § 362(b)(9)(D)[2]. I found that the "Collection Notice" dated December 21, 1995 was a willful stay violation and that under 11 U.S.C. § 362(h), the Headricks were entitled to actual damages. More specifically, I found that the Headricks were entitled to attorney fees and costs for prosecuting the stay violation, including all representation before this court and all appeals in this adversary proceeding.

At the June 22, 2001 trial, Cynthia Headrick testified as to the emotional damage caused by the receipt of the second collection notice. Ms. Headrick stated that her husband, Raymond Headrick, became extremely angry and that she herself was upset. Ms. Headrick also testified having to take time off from work to consult an attorney about this matter.

The Headricks have been represented by Mr. Scott Klosinski since the filing of the underlying bankruptcy case and throughout this adversary proceeding. For the appeal on the sovereign immunity issue, the Headricks were also represented by Mr. David J. Bederman professor at Emory University School of Law. Both Messrs. Klosinski and Bederman offered into evidence itemized invoices at the June 22, 2001 trial.

Mr. Klosinski provided a breakdown of his services and charges to the Headricks for the adversary proceeding. The total number of billable hours was listed as 169.65 hours for a subtotal of $25,181.25. While 159.00 hours were billed at $150.00 per hour, 10.65 hours were billed at $125.00 an hour. Expenses such as post-

---

**2.** 11 U.S.C. § 362(b)(9)(D) provides:
(b) The filing of a petition under section 301, 302 or 303 of this title [11] ... does not operate as a stay-
(9) under subsection (a), of-
(D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

age and photocopies were $149.70. Attorney fees and expenses totaled $25,330.95.

Mr. Bederman requests legal fees for 92.25 hours at $250.00 per hour for a total of $23,062.50. Mr. Bederman submitted an affidavit describing his qualifications and reasonableness of his hourly rate. According to his affidavit, Mr. Bederman is "regarded as one of the nation's foremost authorities and litigators on the Eleventh Amendment immunities of states in federal court proceedings." (Bederman Aff. ¶ 6). Furthermore, Mr. Bederman states that his regular billing rate of $250 per hour is "low in comparison to my colleagues and peers specializing in appellate practice in law firms located around the nation. I have been paid this rate in other cases where court-awarded fees have been granted". (Bederman Aff. ¶ 11). *See In re Straight*, Ch. 7 Case No. 95–10007, slip op. (Bankr.D.C. Wyo. September 2, 1999)(P. McNiff), *aff'd*, *Wyoming Dept. of Transportation v. Straight (In re Straight)*, Case No. 97–8083, slip op. (10th Cir. June 7, 1999)(Bederman awarded $250 per hour rate in bankruptcy case where state agency unsuccessfully argued sovereign immunity defense against 11 U.S.C. § 362 automatic stay violation claim).

Two issues are presented: 1)the determination of the hourly rate for attorney fees for the Headricks' attorneys, Messrs. Scott Klosinski and David Bederman and 2) the award of actual damages to the Headricks. Georgia argues that the fee

limits of 28 U.S.C. § 2412(d)(2)(H)(ii), as cited by 11 U.S.C. § 106(a)(3), limit the award of attorney fees to $125 per hour. The Headricks maintain that 1) the monetary limitations of 11 U.S.C. § 106(a)(3) do not apply because sovereign immunity was waived by Georgia through filing a proof of claim and 2) even if 11 U.S.C. § 106(a)(3) applied, special factors allow for a fee enhancement above the statutory rate.

### Attorney Fees

Georgia willfully violated the automatic stay of 11 U.S.C. § 362 by sending the Headricks the collection notice dated December 21, 1995. Under 11 U.S.C. § 362(h), "[a]n individual injured by any willful violation of a stay...shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Because Georgia is a governmental unit whose sovereign immunity was abrogated by 11 U.S.C. § 106(a), damages are limited by 11 U.S.C. § 106(a)(3), which prohibits punitive damages and states that an "order or judgment for costs or fees...against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28." 28 U.S.C. § 2412(d)(2)(A), which is part of the Equal Access to Justice Act ("EAJA"), limits the award of attorney fees to $125 per hour.[3]

The Headricks argue that the damage limitations of 11 U.S.C. § 106(a)(3) do not apply because Georgia waived its sovereign immunity by filing a proof of claim,

---

**3.** 28 U.S.C.A. § 2412(d)(2)(A) states in pertinent part:

(A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee).

and therefore their recovery is not limited by § 106(a). The Headricks rely on the Eleventh Circuit Court of Appeals' decision in *State of Georgia Dept. of Revenue v. Burke,* which held that Georgia waived its sovereign immunity by filing a proof of claim. 146 F.3d 1313, 1319 (11th Cir.1998). However, the Court of Appeals did not reverse my ruling in this case or the District Court's affirmance that sovereign immunity was waived under 11 U.S.C. § 106(a); rather, the Court of Appeals declined to address the constitutionality of 11 U.S.C. § 106(a) because it derived the same result from a different analysis[4]. *Id.* at 1317. My holding that sovereign immunity is abrogated by 11 U.S.C. § 106(a) is still valid, and the damage limitations of 11 U.S.C. § 106(a)(3) apply.

■ While the EAJA limits the award of attorney fees to $125 per hour, the court may determine "that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). In determining whether to apply higher rates, the court is to perform a two-step analysis. *Meyer v. Sullivan et al.,* 958 F.2d 1029, 1033 (11th Cir.1992)(court to consider cost of living adjustment when awarding attorney fees under the EAJA). The first step is to determine the market rate for similar services provided by competent attorneys. *Id.; see also Brown v. United States (In re Brown),* Ch. 13 Case No. 86–10031, Adv. No. 93–0106A, slip op. at 10 (Bankr.S.D. Ga. Augusta Division, July 10, 1997)(J. Dalis)(attorney fees awarded to debtor under EAJA adjusted for cost of living). If

the market rate is greater than the statutory rate, the court should then determine whether to enhance the rate to take into account increases in the cost of living or "special factors" or both. *Meyer,* 958 F.2d at 1033–34.

■ Special factors include "some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988)(court abused discretion in enhancing EAJA rates). Examples listed by the *Pierce* Court include "identifiable" specialty areas such as patent law or knowledge of a foreign law or language. *Id.* The *Pierce* Court also listed factors courts should not rely on; these include novel and difficult issues, the undesirability of the case, the counsel's ability, and the results obtained. *Id.* Higher rates may be awarded when such qualifications are necessary and obtainable only above the statutory rate. *Id.* The fee applicant has the burden of proof in "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988)(court to address skill and experience of class counsel when determining reasonable hourly rate). The Headricks therefore bear the burden of establishing 1) the prevailing market rate and 2) if the prevailing market rate is $150 and $250 an hour, for Messrs. Klosinski and Bederman respectfully, then that special factors justify an increase.

---

**4.** "However, we need not resolve this abrogation issue because *assuming arguendo* that the State of Georgia has Eleventh Amendment immunity and it has not been validly abrogated by § 106(a), we conclude that in this case

the State waived its sovereign immunity by filing a proof of claim in the debtors' bankruptcy proceedings." *Burke,* 146 F.3d 1313, 1317 (11th Cir.1998)(emphasis added).

■ The Headricks did not address the issue of prevailing market rates in their brief. Previous cases from the Southern District of Georgia, however, have found that $150 per hour is a reasonable hourly attorney fee for this area. *See In re Burke Mfg. Co., Inc.,* Ch. 11 Case No. 91–10468 (Bankr.S.D. Ga. Augusta Division, September 10, 1991)(J. Dalis)(attorneys within Southern District of Georgia with at least ten years experience and expertise are compensated at hourly rate between $125 and $150); *First American Health Care of Georgia, Inc.,* Ch. 11 Cases Nos. 96–20188 through 96–20218 (Bankr.S.D. Ga. Brunswick Division, August 4, 1997)(L.Davis)(as of 1995, bankruptcy court had established a chapter 11 lodestar range from $150 to $175 or higher). I therefore find that Mr. Klosinski's requested rate of $150 an hour is within the range of prevailing market rates for this area.

■ I also find that Mr. Bederman's $250 per hour rate for his services is within the range for prevailing market rates for his specialty. Mr. Bederman, in his affidavit, stated that other courts have permitted him to receive his $250 per hour rate. (Bederman Aff. ¶ 11). In *Straight,* the bankruptcy court approved Mr. Bederman's rate of $250 per hour for representing debtors against the Wyoming Department of Transportation. *In re Straight,* Ch. 7 Case No. 95–10007, slip op. (Bankr. D.C.Wyo. September 2, 1999)(P. McNiff), *aff'd, Wyoming Dept. of Transportation v. Straight (In re Straight),* Case No. 97–8083, slip op. (10th Cir. June 7, 1999). While more than an affidavit is necessary to show the prevailing market rate, evidence of "rates actually billed and paid in similar lawsuits" may be sufficient. *Norman,* 836 F.2d at 1299. Based on the decision of the *Straight* court, the Headricks have met their burden of proof in establishing that $250 per hour is the current market rate for Mr. Bederman's type of services.

■ Once the fee applicant has established that the requested fee reflects the prevailing market rate, the next step is to show that the statutory rate should be increased to account for special factors or inflation or both. The Headricks argue that two factors justify higher rates: 1) the delay in litigation caused by Georgia's challenging this Court's jurisdiction and 2) the complex constitutional law issues presented in this case. With regard to the first factor, I find that the delays alone do not justify a higher rate. The Eleventh Circuit Court of Appeals, in *Pollgreen v. Morris,* stated that "[a] delay that occurred because the government litigated a position that lacked substantial justification is not a permissible special factor because any litigation eligible for EAJA fees, by definition, involves the government's pursuit of an unjustified position." 911 F.2d 527, 538 (11th Cir.1990)(court cannot double statutory rate on basis of government's unjustifiable position). A delay may be considered a special factor if the delay was excessive or a result of bad faith. *Id.* In the instant case, Georgia may have been denied relief at every appeal, but this establishes "pursuit of an unjustified position" and not evidence of bad faith or excessive litigiousness. Persistent appellate litigation by itself is not evidence of bad faith. The Headricks also argue that I should award a higher hourly rate because of the complexity of the legal issues, citing *Danning v. Lummis (In re Tom Carter Enterprises, Inc.),* 159 B.R. 557, 562 (Bankr.C.D.Cal.1993), in which the court awarded the plaintiffs' counsel a higher hourly rate because of their specialized knowledge in the area of bankruptcy jurisdiction. With regards to Mr. Klosinski, I do not find that his bankruptcy expertise justifies a higher rate. *Danning*

is distinguishable because the court also took into account the substantial increase in the cost of living when making its determination. *Id.* I am persuaded by the reasoning of the court in *Moulton v. United States (In re Moulton)* that a bankruptcy specialty was not a special factor alone to increase the hourly rate: "To recognize knowledge, even a thorough knowledge of the Bankruptcy Code, would entitle every bankruptcy practitioner to qualify for enhancement when they seek an allowance against the Government under the EAJA." 195 B.R. 954, 959 (Bankr.M.D.Fla.1996). Under this analysis Mr. Klosinski cannot be awarded a higher hourly rate solely on his bankruptcy expertise.

■ While I do not find any special factors that justify increasing Mr. Klosinski's hourly rate, the EAJA does allow for increases resulting from inflation from the day the statutory rate was set. *Brown v. United States (In re Brown),* Ch. 13 Case No. 86–10031, Adv. No. 93–01016A, slip op. at 11 (Bankr.S.D. Ga. Augusta Division, July 10, 1997)(J. Dalis). In *Brown,* I adjusted the then-hourly rate of $75 per hour to account for inflation. *Id.* The calculations of Mr. Klosinski's hourly rate adjusted for inflation were made in accordance with those in *Brown.* The following table indicates the appropriate rates payable each year since the enactment of the $125 rate in 1996 [5]:

| Year | Consumer Price Index | Increase | Adjusted Rate |
|------|------|------|------|
| 1996 | — | — | $125.00 |
| 1997 | 1.70% | $2.13 | $127.13 |
| 1998 | 1.60% | $2.03 | $129.16 |
| 1999 | 2.70% | $3.49 | $132.65 |
| 2000 | 3.40% | $4.51 | $137.16 |
| 2001 | 2.70% | $3.70 | $140.86 |

The application for Mr. Klosinski's fee is broken down by the year in which the services were rendered at the applicable inflation adjusted statutory rate.

| Year | Adjusted Rate | Hours Worked | Total |
|------|------|------|------|
| 1996 | $125.00 | 47.35 | $ 5,918.75 |
| 1997 | $127.13 | 17.25 | $ 2,192.91 |
| 1998 | $129.16 | 13.80 | $ 1,782.39 |
| 1999 | $132.65 | 4.50 | $ 596.91 |
| 2000 | $137.16 | 37.60 | $ 5,157.08 |
| 2001 | $140.86 | 49.15 | $ 6,923.24 |
| | | 169.65 | $22,571.28 |

The Headricks may therefore recover $22,571.28 plus expenses of $149.70 for Mr. Klosinski's services, for a total of $22,720.98.

■ Mr. Bederman may recover his $250 per hour rate because of his specialized knowledge of Eleventh Amendment sovereign immunity issues. As previously discussed, the Supreme Court has noted that expert knowledge in a specialized area of law can justify an award higher than that established by the EAJA. *Pierce v. Underwood,* 487 U.S. 552, 572, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988). While bankruptcy law is not a specialized area of the law justifying a higher rate, expertise in Eleventh Amendment sovereign immunity is. The constitutional issues raised by Georgia in this case were complex, as evidenced by the split between the courts as to the constitutionality of 11 U.S.C. § 106(a). *See* Colliers on Bankruptcy, ¶ 106.02[1][b][ii]. While the *Pierce* Court explicitly stated that a case's novelty and difficulty standing alone do not justify a higher rate, it does authorize higher rates when greater qualifications are necessary and obtainable only at rates above $125 per hour. 487 U.S. at 572, 108 S.Ct. at

---

5. Consumer price index rates are from the U.S. Department of Labor: *ftp://ftp.bls.gov/pub/special.requests/cpi/ cpiai. txt* (October 5, 2001); the value for 2001 was estimated based on the 2.7% CPI calculated for the period between August 2000 and August 2001.

2554. Georgia appealed this case ultimately to the Supreme Court, which appeals made necessary the services of a sovereign immunity expert. I find Mr. Bederman to be such an expert and award his requested $250 per hour rate. Because I have granted the requested fee enhancement, I do not address any cost of living adjustments.

While stating in its brief that it did not dispute the number of hours claimed, Georgia expresses concern that Mr. Bederman not recover his fees for his representation in *Burke*, which was consolidated with this case before the Eleventh Circuit Court of Appeals and the Supreme Court. The court may exclude hours that would be "unreasonable to bill to a client and therefore to one's adversary." *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir.1988). Mr. Bederman's invoice breaks his services down into four phases of litigation before: a) the United States District Court for the Southern District of Georgia; b) the Eleventh Circuit Court of Appeals; c) the Supreme Court; and d) this Court on remand. Mr. Bederman admitted in his affidavit that the hours in sections (b) and (c) reflect work for both the *Burke* and *Headrick* cases. (Bederman Aff. ¶ 18). Part (d) shows two entries where the hours have been billed at a half rate and apportioned with the *Burke* matter. No such revisions were made in sections (b) and (c) of the invoice. I denied recovery of attorney fees in *Burke*, which involved a 11 U.S.C. § 524 discharge injunction violation. *Burke v. State of Georgia Dept. of Revenue (In re Burke)*, 285 B.R.

534, 537 (Bankr.S.D.Ga.2001)(J. Dalis). An award of attorney fees against Georgia having been denied in *Burke*, cannot be recouped here. I therefore divide in half the number of hours he reports in sections (b) and (c) of his invoice. Thus, the number of allowed billable hours are reduced from 92.25 hours to 63.13 hours, which at $250 per hour, totals $15,781.25.

Georgia argues that Mr. Bederman is not entitled to attorney fees because he did not obtain the permission of the court under 11 U.S.C. § 327.[6] 11 U.S.C. § 327, however, applies only to professional persons hired by the trustee, and not those hired by the debtor. Georgia's argument is meritless.

### Actual Damages

The Headricks request $2,000 in damages for unspecified injuries. This particular request is surprising in light of the Eleventh Circuit Court of Appeals' statement that "[w]e emphasize that our holding...is quite narrow because the debtors seriously seek to recover only the costs and attorneys' fees incurred in enforcing the bankruptcy court's automatic stay and discharge injunction." *Burke*, 146 F.3d at 1319. The Eleventh Circuit further commented that the District Court had observed that proving actual damages will be difficult, and that at oral argument, "the debtors attorney conceded that there was no indication that damages in the two cases would go beyond the costs and attorney fees incurred in enforcing the bankruptcy court's automatic stay...injunction." *Id.* The Headricks have not given

---

**6.** 11 U.S.C. § 327 states in pertinent part:
(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

any evidence of what damages this $2,000 is meant to cover.

11 U.S.C. § 362(h), however, mandates that the offending party shall be responsible for any actual damages resulting from breaking the automatic stay. At the June 22, 2001 hearing, Ms. Headrick's testimony described some of the emotional distress caused by the receipt of Georgia's second collection letter. Furthermore, Ms. Headrick also stated that she had to take time off from work to consult with her attorney about this letter. The evidence fails to establish $2,000 in damages; however I do find that the Headricks are entitled to nominal damages of $200 for the emotional distress and lost pay resulting from the 11 U.S.C. § 362 automatic stay violation.

It is therefore ORDERED that Georgia pay the Headricks $38,702.23 in actual damages for attorney fees, expenses, emotional distress and lost pay.